UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KASTRIOT BACUKU,<br><br>Plaintiff,<br><br>v.<br><br>OSCAR AVILES, et al.,<br><br>Defendants. | Civil Action No. 15-2543 (MCA)<br><br>OPINION |

**ARLEO, United States District Judge,**

**I.     INTRODUCTION**

This matter has been opened to the Court by Petitioner's Petition for a writ of habeas corpus challenging his detention pursuant to 28 U.S.C. § 2241. (Civ. Act. No. 15-2543, ECF No. 1.) Petitioner, a Visa Waiver Program up ("VWP") violator whose asylum-only proceedings have spanned more than a decade and were recently reopened for the third time, has been detained by Immigrations and Customs Enforcement ("ICE") for over 23 months. The Petition has been fully briefed, and the Court has considered the arguments of the parties. For the reasons explained in this Opinion, the Court finds that Petitioner is entitled to an individualized bond hearing before an immigration judge to be provided within ten days of the entry of the Order accompanying this Opinion.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

It appears undisputed that Petitioner, a citizen of Albania, entered the United States on or about July 20, 2003 through the Visa Waiver Program ("VWP") using an Italian passport. (ECF No. 1, Pet. at ¶ 28.) The details of regarding how he came to the attention of ICE are not

1

provided by Petitioner or Respondent, but it is undisputed that Petitioner was placed in asylum-only proceedings more than a year later, on or about August 4, 2004. (*Id.*)

It is also undisputed that Petitioner's asylum proceedings have been extremely protracted and his claim for asylum remains unresolved. He was first denied relief by the Immigration Judge ("IJ") on June 23, 2005, but the case was remanded by the Board of Immigrations Appeals ("BIA") on April 9, 2007. (Pet. at ¶ 29.) On June 19, 2008, the IJ again denied relief, and the BIA affirmed on June 21, 2010. (*Id.* at ¶ 30.) On September 22, 2011, the Second Circuit affirmed in part and remanded in part, finding that BIA erred in denying Petitioner humanitarian asylum without addressing all of the past persecution suffered by Petitioner. The BIA then remanded the case to the IJ again to consider the issue of humanitarian asylum. (*Id.* at ¶ 31.)

Petitioner's asylum case was still pending before the IJ when, on February 3, 2014, ICE issued to Petitioner a Notice of Intent to Remove for Violating the Terms of Your Admission and Warrant under Section 217 of the Immigration and Nationality Act. (Resp. Decl. at ¶ 3. Ex. 1.) Petitioner was arrested and has been detained at the Hudson County Correctional Facility since February 3, 2014. (*Id.*) Although it is not entirely clear from the record, it appears that ICE arrested Petitioner after learning that Albania had posted a warrant for Petitioner's arrest on Interpol in connection with a 2003 murder in Albania. (*See* Res. Decl. ¶ 6, Ex. 4, Letter from Saul C. Brown dated February 6, 2015; *see also* Pet. at ¶ 32.) After he was detained, Petitioner filed several motions for custody redetermination, which were denied on the basis that IJs lack jurisdiction to review custody status of VWP violators in asylum-only proceedings.[1] (Res. Decl. ¶¶ 8, 16, Exs. 6, 13.)

---

[1] *See Matter of A-W*, 25 I & N Dec. 45 (BIA 2009) (finding that VWP entrants are not entitled to a bond redetermination proceeding before an Immigration Judge).

2

On September 12, 2014, the IJ issued a decision denying Petitioner's application for asylum and related applications. (Res. Decl. ¶ 19, Ex. 16.) On December 23, 2014, the BIA dismissed Petitioner's appeal. (Res. Decl. ¶ 20, Ex. 17.) On January 6, 2015, Petitioner filed a Petition for Review with the Court of Appeals for the Second Circuit.[2] (Res. Decl. ¶ 21.) On January 23, 2015, Petitioner filed a motion to reconsider with the BIA, which was denied on March 10, 2015. (Res. Decl. ¶¶ 22, 23.)

Petitioner filed the instant habeas Petition on April 9, 2015. (ECF No. 1.) On May 6, 2015, this Court dismissed the non-Warden Respondents and ordered Respondent to file an Answer. (ECF No. 2.) After several extensions of time, Respondent filed its Answer on July 20, 2015. (ECF No. 9.)

On September 9, 2015, however, the BIA issued a decision reopening Petitioner's immigration proceedings and remanding the matter to the IJ for the limited purposes of assessing the impact of a June 6, 2015 Albanian Supreme Court decision on his application for asylum.[3] (*See* ECF Nos. 12, 12-1.) That decision by the Albanian Supreme Court allegedly vacated Petitioner's conviction and remanded the matter for retrial. (*Id.*) This Court then ordered supplemental briefing, which is explained in more detail below, to address the effect of

---

[2] On February 18, 2015, Petitioner also filed a motion for stay of removal with the Second Circuit in connection with his Petition for Review. (Res. Decl. ¶ 25.) On November 3, 2015, the Second Circuit dismissed the Petition for Review by stipulation of the parties in light of the BIA's reopening of Petitioner's asylum proceedings and denied the motion for a stay as moot. (*See* ECF No. 18-1.)

[3] On May 18, 2015, Petitioner had filed a motion to reopen proceedings with the BIA, which was opposed by ICE on May 28, 2015. (Res. Decl. ¶ 31, Exs. 27, 28.) On June 30, 2015, ICE moved to expedite the adjudication of Petitioner's motion to reopen. Then, on July 29, 2015, shortly after it had filed its Answer in this case, Respondent notified the Court that the BIA had denied Petitioner's motion to reopen on July 24, 2015. (ECF No. 10-1.) Petitioner's attorney subsequently filed a Reply on his behalf. (ECF No. 11.) On September 9, 2015, the BIA issued a decision reopening Petitioner's immigration proceedings and remanded the matter to the IJ.

3

the reopening on Petitioner's continued detention. (ECF Nos. 15, 16, 17.) On October 13, 2015, Petitioner's attorney notified the Court that the immigration court had set a hearing date of December 10, 2015 for Petitioner's asylum application. (ECF No. 13.) On December 17, Respondent notified the Court that the immigration court handling Petitioner's asylum case has advised that it would issue a decision by January 27, 2015. (ECF No. 19.) The case is now fully briefed and ready for disposition.

## III. DISCUSSION

### a. The Parties Arguments

In his Petition, which was submitted by counsel and filed before the BIA reopened his asylum proceedings, Petitioner made two primary arguments for relief. First, he argued that the *Matter of Werner*, 25 I & N Dec. 45 (BIA 2009) (finding that VWP entrants are not entitled to a bond redetermination proceeding before an Immigration Judge), was wrongly decided insofar as it interpreted 8 C.F.R. § 1236 to deprive IJs of jurisdiction to provide bond hearings to VWP violators in asylum-only proceedings. He argued, instead, that he is entitled to such a hearing during the pendency of his asylum-only proceedings. Second, he argued that, irrespective of the BIA's interpretation of its regulations, his detention has become unreasonably prolonged and that due process mandates that Petitioner be released or be afforded an individualized bond hearing before an immigration judge. (ECF No. 1, Pet. at ¶¶ 36-51.)

In its Answer, also filed prior to the BIA's reopening of Petitioner's asylum-only proceedings, Respondent relied on *Matter of A-W*, 25 I. &N. Dec. 45, 47-48 (BIA 2009), and argued that Petitioner's detention is authorized by 8 U.S.C. 1187(c)(2)(E). *See Matter of Werner*, 25 I&N at 47 (stating without analysis that "the statutory authority for the [VWP] applicant's detention is contained in section 217(c)(2)(E) of the Act, 8 U.S.C.A. § 1187(c)(2)(E)

(West Supp. 2008), not section 236 of the Act, 8 U.S.C. § 1226 (2006)"). (Res. Br. at 9-12.) Respondent further argued that the discretionary determination by ICE to detain a VWP violator, like Petitioner, is not subject to review by the Immigration Judge or the BIA. *See Matter of A-W*, 25 I. &N. Dec. at 47-48. Respondent acknowledged, however, that there are constitutional limits to Petitioner's detention as a VWP violator and likened Petitioner's then-procedural posture to that of an alien under a final order of removal.[4] *See Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) (finding that denial of VWP applicant's petition for asylum, withholding of removal, and relief under the CAT was a "final order of removal" under 8 U.S.C. § 1252(a)(1) for purposes of appellate jurisdiction). Respondent further argued that Petitioner's continued detention is constitutionally permissible under *Zadvydas v. Davis*, 533 U.S. 678 (2001), which applies to post-removal aliens, because Petitioner did not meet his burden to establish that his removal was not reasonably foreseeable once the Second Circuit issued its ruling on Petitioner's then-pending petition for review. (*Id.*, Res. Br. at 8-9.)

The Court ordered supplemental briefing directed at the effect of BIA's reopening of Petitioner's asylum case on Petitioner's habeas Petition (ECF No. 15), and in that briefing, Respondent maintained its position that Petitioner, as a VWP violator, is detained at ICE's discretion under 8 U.S.C. 1187. (ECF No. 16.) Respondent also stated the following with respect to the BIA's reopening of Petitioner's asylum only proceedings:

> However, the BIA's reopening is relevant as to whether Petitioner has demonstrated that his removal is not reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S 678, 701 (2001). Given the length

---

[4] Before removal proceedings are completed, the Attorney General has the discretionary authority to detain or release an alien under section 1226(a). *See* 8 U.S.C. § 1226(a)(2). After removal proceedings have been completed, the detention or release of an alien is governed by section 1231(a), which governs "detention, release, and removal of aliens ordered removed." 8 U.S.C. § 1231(a).

5

> of Petitioner's detention, and the BIA's reopening, the Court may find that Petitioner has satisfied his burden of demonstrating that his removal is not likely in the reasonably foreseeable future, <u>and that constitutional limitations thus mandate a bond hearing.</u> Should the Court so find, an appropriate remedy would be for the Court to order the IJ to provide a bond hearing.

*Id.* (emphasis added). Thus, Respondent, at the very least, conceded that there are constitutional limits to Petitioner's detention, even though he is detained as a VWP violator. Petitioner, in his supplemental letter brief, reiterated his position that in light of the reopening of his asylum-only proceedings, Petitioner is plainly a pre-removal alien, albeit in in asylum-only proceedings, and his detention is thus governed by the general detention statute, 8 U.S.C. § 1226, which provides for a bond hearing unless the alien has been convicted of certain crimes. (ECF No. 17.) Petitioner also reiterated that "[i]rrespective of whether [Petitioner] is being held pursuant to 8 U.S.C. § 1226 or 8 U.S.C. § 1187, Petitioner should be released or provided with a [bond] hearing because he has been detained for an unreasonable period of time." (*Id.* at 2.)

### b. Petitioner's Detention and the Visa Waiver Program

The Visa Waiver Program originally was entitled the "Visa Waiver Pilot Program" and was enacted as section 217 of the Immigration and Nationality Act. *See* Pub. L. No. 99–603, 100 Stat. 3359, 3435–39 (1986). The VWP permits visiting aliens to enter and remain in the United States as "nonimmigrant visitor[s] ... for a period not exceeding 90 days." 8 U.S.C. § 1187(a). In *Bradley v. Attorney General*, 603 F.3d 235, 238 (3d Cir. 2010), the Third Circuit described the pertinent components of the VWP:

> Under the VWP, a qualifying visitor may enter the United States without obtaining a visa, so long as a variety of statutory and regulatory requirements are met. Among other things, a visitor seeking admission under the VWP must execute certain immigration forms, present a passport from a qualifying country, and possess a round-trip ticket. 8 U.S.C. § 1187(a). Once admitted under the VWP, a visitor may remain in the United States for 90 days. 8 U.S.C. § 1187(a).

6

Importantly, VWP entrants must waive certain procedural rights related to removal that are afforded other aliens within the United States. As explained by the Third Circuit in *Bradley*, "[m]ost significantly, a VWP visitor must waive his or her rights to contest the government's admissibility determinations and removal actions, except that the alien may contest removal actions on the basis of asylum."[5] 603 F.3d at 238 (citing 8 U.S.C. § 1187(a)–(b)); *see also Shehu*, 482 F.3d at 655 (citing 8 U.S.C. § 1187(b)) ("Aliens admitted under this program forfeit the right to challenge the basis of their removal, though they may still apply for asylum, withholding of removal, and relief under the CAT."); *Byrne v. Sec'y U.S. Dep't of Homeland Sec.*, 618 F. App'x 143, 145, n.1 (3d Cir. 2015) (Aliens admitted under the VWP waive their right to contest removal, except on the basis of asylum, as a condition of entry) (citing 8 U.S.C. § 1187(b)(2)).

As recognized by the Third Circuit,

> [f]or the VWP entrant, the effects of this no-contest provision are severe. A VWP entrant waives the right to assert any non-asylum objection to his removal. 8 U.S.C. § 1187(b)(2). Additionally, unlike the ordinary removal case, a VWP entrant's removal 'shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability.'" But as the Court of Appeals for the Ninth Circuit has recognized, given the ease and convenience with which a VWP

---

[5] Petitioner is bound by the terms of the VWP despite his use of a fraudulent Italian passport. It is well-settled that a VWP entrant is bound by the terms of the waiver even where that entrant is has presented fraudulent travel documents. "[A] fraudulent [VWP] applicant ... is a [VWP] applicant nevertheless." *Hui Hua Xiao v. Attorney Gen. of U.S.*, 484 F. App'x 730, 732 (3d Cir. 2012) (finding that Chinese National who entered country on fraudulent Japanese passport and was subsequently denied asylum could not further challenge his removal and was bound by the terms of the VWP waiver) (citing *Shabaj v. Holder*, 602 F.3d 103, 106 (2d Cir. 2010); *see also In re Kanagasundram*, 22 I. & N. Dec. 963, 964 (BIA 1999) (explaining that "the provisions of 8 C.F.R. § 217.4 are not limited to aliens who are actually nationals of VWP[ ] designated countries, but specifically encompass individuals who present fraudulent and counterfeit travel documents from such countries.").

7

>visitor may enter the United States, the VWP's "linchpin ... is the waiver, which assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays." *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005).

*Bradley*, 603 F.3d at 238-39; *see also Vera v. Attorney Gen. of U.S.*, 672 F.3d 187, 198 (3d Cir.), (explaining that "need for summary removal procedures to enforce the conditions of admittance under the VWP is obvious" and that "if individual hearings before already overworked immigration judges were required before an alien admitted pursuant to the VWP could be removed summarily[,] the program might become unmanageable"), *vacated on other grounds*, 693 F.3d 416 (3d Cir. 2012).

VWP entrants, like Petitioner, who apply for asylum, are granted "asylum-only" hearings. *See* 8 C.F.R. § 208.2(c)(iv). If an applicant is denied relief in those proceedings, the VWP participant can be removed without any further process. 8 C.F.R. § 217.4(a)(1); *see also Shehu*, 482 F.3d at 656 (holding "that a denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the CAT constitutes 'a final order of removal' within the meaning of [§ 1252(a)(1)], as the alien is entitled to no further process before deportation and finding that the Circuit Court had jurisdiction over the appeal from the denial of an asylum application).

In *Matter of Werner*, the BIA held that the Attorney General had not delegated authority to immigration judges under 8 C.F.R. § 1236 to redetermine the conditions of custody imposed by the DHS for VWP entrants in asylum-only proceedings who have not been served with a notice to appear (NTA).[6] 25 I&N Dec. at 47-48 (finding that *Matter of Gallardo*, 21 I&N Dec. 210 (1995), which authorized bond hearings for asylum-only applicants, has been superseded by

---

[6] Generally, where an alien is VWP entrant and files an application for asylum, the government issues a Notice of Referral (which commences an asylum-only proceeding before an immigration judge) not a Notice to Appear (which commences a removal proceeding under INA § 240). *See Hui Hua Xiao v. Attorney Gen. of U.S.*, 484 F. App'x 730, 731 (3d Cir. 2012) (explaining same).

8

regulation).[7] Thus, under the BIA's interpretation of the pertinent regulations, a noncitizen admitted to the United States pursuant to the VWP who has not been served with an NTA is not entitled to a custody hearing before an immigration judge under 8 C.F.R. § 1236.1(d), the regulation that sets out the procedures for custody redeterminations. According to the BIA, the custody regulation, 8 C.F.R. § 1236.1(d), does not confer general custody jurisdiction over asylum-only cases; instead the IJ's jurisdiction in so-called asylum-only proceedings is expressly limited pursuant to 8 C.F.R.§ 1208.2 to determining whether he or she is eligible for asylum or withholding of removal.[8] In that decision, the BIA also stated, without citation or analysis, that

---

[7] *In re Gallardo-Fresneda*, 21 I. & N. Dec. 210, 1995 WL 804526 (B.I.A. 1995), the Board of Immigration Appeals held that an alien's admission under the Visa Waiver Program (VWP) did not curtail his right to a bond redetermination hearing after applying for asylum and withholding of deportation. The alien, a citizen of France, had entered under the VWP but remained beyond his authorized stay. When the INS ordered him deported, he submitted a request for asylum. He also requested a bond redetermination hearing before an immigration judge because a Department of Homeland Security district director had ordered him held without bond. The immigration judge, finding that the alien had waived his right to request a custody hearing, declined to conduct such a hearing. On appeal, the BIA noted that section 217 of the Immigration and Nationality Act, 8 U.S.C.A. § 1187(b)(2), specifies that a VWP entrant waives the right either to review or appeal a determination regarding admissibility, or to contest, other than on the basis of an asylum application, any action for deportation. A hearing regarding bond proceedings is not included, the Board observed. Further, the Board noted, former 8 C.F.R. § 242.2(d) provided that, after an order to show cause is issued for an alien seeking asylum, "upon application by the respondent for release from custody ... an Immigration Judge may ... continue to detain a respondent in custody, or to release a respondent from custody, and to determine whether a respondent shall be released under bond, and the amount of the bond, if any." Thus, the BIA found that there was no indication that Congress intended that section 217 would deny an alien the opportunity to request a bond redetermination hearing. Accordingly, the BIA found that the alien was entitled to a bond redetermination hearing, and it remanded the record to the immigration judge to allow the alien the opportunity to pursue his request.

[8] Under 8 C.F.R. § 1208.2(c)(1)(iv), immigration judges have exclusive jurisdiction over asylum applications filed by aliens who have been admitted pursuant to the Visa Waiver Program. As explained by the BIA in *Matter of Werner*, 25 I. & N. Dec. at 48, "C.F.R. § 1208.2(c)(3)(i) provides that the Immigration Judge's scope of review under that section is 'limited to a determination of whether the alien is eligible for asylum ... and whether asylum shall be granted in the exercise of discretion.' The regulation further states that '[d]uring such proceedings, all

"the statutory authority for the [VWP] applicant's detention is contained in section 217(c)(2)(E) of the Act, 8 U.S.C.A. § 1187(c)(2)(E) (West Supp. 2008), not section 236 of the Act, 8 U.S.C. § 1226 (2006))." [9] *Id.* at 47. Respondent relies solely on *Matter of Werner, id.* at 47, in arguing that Petitioner's detention is governed by 8 U.S.C. §1187 and not 8 U.S.C. §1226.

### c. The Court's Decision

This case requires the Court determine whether, under the facts of this case, Petitioner, as a VWP violator, is entitled to either (1) an individualized bond hearing before an immigration judge or (2) supervised release. The Court has carefully considered the arguments of the parties and finds that it need not decide whether Petitioner's detention without bond is specifically

---

parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief.'" *Id.* The BIA has interpreted the latter statement to preclude bond redeterminations. *See id.*

[9] Section 1187(c)(2)(E) of the visa waiver statute reads as follows:

> E) Repatriation of aliens
>
> The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C.A. § 1187(c)(2)(E) (West). The Court notes that this provision is housed in the subsection of the VWP that explains the designation and qualifications of countries participating in the VWP. *See* 8 U.S.C. § 1187(c)(2). Subsection E, on its face, appears to state that VWP countries are obligated to accept their citizens for repatriation in a timely manner, *i.e.*, within three weeks, if those citizens are subject to a final order of removal from the United States. The remainder of the provision clarifies that the three-week timeline described in the first sentence does not create a duty/right of removal or release within that time period. *See* 8 U.S.C. § 1187(c)(2)(E). The provision does not otherwise address detention or release.

authorized by the Visa Waiver Statute, 8 U.S.C. § 1187, or the general detention statute, 8 U.S.C. § 1226.[10] Even if Petitioner were detained solely at ICE's discretion pursuant to 8 U.S.C § 1187, the Court finds, as conceded by Respondent, that the Due Process Clause limits the detention of VWP entrants claiming asylum to a reasonable period of time, and that Petitioner's detention has become unreasonably prolonged under the facts here.

The Due Process Clause of the Fifth Amendment forbids the Government to "depriv[e]" any "person ... of ... liberty ... without due process of law." It is well established that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

The Court begins its due process analysis by noting that "[i]mmigration law draws a bright line between 'an alien who has effected an entry into the United States and one who has never entered.'" *Bayo v. Napolitano*, 593 F.3d 495, 502 (7th Cir. 2010) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)); *see also Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004) (citations, alteration, and internal quotation marks omitted). "A fundamental distinction runs throughout immigration law: the distinction between an alien who has effected an entry into the United States and one who has never entered."). "It is well established that certain constitutional protections available to persons inside the United

---

[10] As explained in this Opinion, the Court finds that Petitioner, who has been in ICE custody for more than 23 months, has been detained for an unreasonable length of time and grants habeas relief on that basis. As such, it has no occasion to address the validity of the IJ's reliance on *Matter of Werner* in refusing to provide Petitioner with a bond hearing, and the Court expresses no opinion regarding the IJ's decision or *Matter of Werner*.

States are unavailable to aliens outside of our geographic borders. *Zadvydas*, 533 U.S. at 693 (citing *See United States v. Verdugo–Urquidez*, 494 U.S. 259, 269 (1990) (Fifth Amendment's protections do not extend to aliens outside the territorial boundaries); *Johnson v. Eisentrager*, 339 U.S. 763, 784 (1950) (same)); *see also Shaughnessy v. United States*, 345 U.S. at 212 (1953) ("[A]n alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (internal quotation marks omitted). "This distinction is significant. Aliens standing on the threshold of entry are not entitled to the constitutional protections provided to those within the territorial jurisdiction of the United States." *Alvarez-Garcia*, 378 F.3d at 1097 (citations and internal quotation marks omitted). "For this reason, immigration laws can constitutionally treat aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable)." *Id.* (citation, alteration, and internal quotation marks omitted). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).

     In this case, the exact circumstances surrounding Petitioner's entry into the United States as a VWP entrant are somewhat hazy.[11] It appears undisputed, however, that Petitioner <u>entered</u>

---

[11] Neither Petitioner nor Respondent has provided any information regarding how Petitioner came to the attention of the Department of Homeland Security as a VWP violator. Petitioner provides only the following cryptic description: "Petitioner is a native and citizen of Albania who entered the United States on or about July 20, 2003. Based on a statement by Petitioner that he had entered the United States using an Italian passport, DHS considered Petitioner to have been admitted pursuant to the Visa Waiver Program." (ECF No. 1, Pet at ¶ 28.) In its supporting brief, the Governments states that "Kastriot Bacuku, a native and citizen of Albania, <u>entered the United States</u> on July 20, 2003, using a fraudulent Italian passport in the name of Vito Delia. Declaration of ICE Deportation Officer John Carey ("Decl.") ¶ 3, Exh. 1. The Department of

the United States through the Visa Waiver Program, albeit through the use of fraudulent travel documents, and subsequently came to the attention of the Department of Homeland Security. Respondent does not dispute that Petitioner <u>entered</u> the United States pursuant to the VWP [12] and also concedes in its briefing that the Due Process Clause applies to his detention.

There is, however, a dearth of habeas case law examining due process challenges to the detention of VWP entrants during the pendency of their asylum-only proceedings. This is not particularly surprising, given that under the BIA's <u>prior</u> interpretation of its regulations, VWP entrants in asylum-only proceedings who were not mandatorily detained under 28 U.S.C. 1226(c) would have been eligible for a bond redetermination. *See Matter of Gallardo*, 21 I&N Dec. 210 (1995). The parties cite to no such cases, and the Court has found only one habeas cases in this district, which was brought by an <u>unsuccessful</u> VWP applicant, who was denied

---

Homeland Security ("DHS") <u>admitted</u> Petitioner pursuant to the Visa Waiver Program, section 217 of the Immigration and Nationality Act ("INA"), a program that allows non-immigrant visitors from designated countries to enter the United States without a visa and remain for 90 days provided the visitor complies with certain statutory and regulatory requirements." (ECF No. 9, Br. at 4 (emphasis added).) The Notice of Intent to Remove issued to Petitioner on February 3, 2014 likewise states that Petitioner was "admitted" into the United States, albeit on a fraudulent passport. (*See* ECF No. 9-2, Ex. 1 to Flanagan Cert.).

[12] For instance, Respondent provides no facts to suggest that Petitioner merely attempted to enter the United States using the fraudulent travel documents and was denied entry at the airport and subsequently paroled into the United States. A grant of temporary parole is not considered admission to the United States. *See* 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of [any alien applying for admission to the U.S.] alien shall not be regarded as an admission of the alien ...."); *see also Nreka v. U.S. Atty. Gen.*, 408 F.3d 1361, 1364 (11th Cir. 2005). If Petitioner had been paroled rather than admitted, he would be subject to the entry fiction and his due process rights would be more limited. *See Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1253 (9th Cir. 2008) ("The entry fiction explains the apparent paradox: the doctrine provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Id.* (citations and internal quotation marks omitted).

13

entry upon her arrival and detained pending the outcome of her asylum-only proceedings.[13] *See Gomez Zuluaga v. Gonzales*, No. 07-CV-2931, 2007 WL 2746831, at *1 (D.N.J. Sept. 14, 2007).

In *Gomez Zuluaga v. Gonzales*, the Petitioner, an unsuccessful VWP applicant who attempted to gain entry through the VWP using a fraudulent Spanish passport, had been detained a total of 14 months at the time the Court decided her habeas Petition, but had been subject to the equivalent of a final order of removal for approximately four months. *Id.* at *1. Petitioner contended that her continued detention violated her due process rights and "argu[ed] that no specific INA statutes or regulations authorize[d] the DHS to detain a VWP applicant in 'asylum-only' proceedings pending a determination of her asylum claim." *Id.* The district court first noted that "the legislature may not have specifically established a link between the VWP and a detention provision" but then determined that Petitioner's detention was nonetheless permissible under the general detention statutes, *i.e.* § 1226 and § 1231. *Id.* Because Petitioner was an unsuccessful VWP applicant who had been denied entry and detained upon her arrival, the district court also emphasized the similarities between Petitioner and an inadmissible arriving alien stopped at the border, explaining that "Petitioner's only options under the INA as an inadmissible alien besides receiving parole (INA § 212(d)(5)(A)) are to leave the U.S. (INA § 235(a)(4)) or be subject to detention (INA § 235(b)(1)-(2))." *Id.* Here, however, as noted above,

---

[13] The Court found only one other habeas case dealing with a VWP violator in asylum only proceedings. *See Kim v. Obama*, No. EP-12-CV-173-PRM, 2012 WL 10862140 (W.D. Tex. July 10, 2012) (applying *Zadvydas* and finding that detention for 19 months did not violate Petitioner's due process rights where the BIA had reopened and remanded Petitioner's asylum case and explaining that Petitioner's continued detention was the direct result of Petitioner's efforts and not improper behavior on the part of the government). Although the district court found that Kim was held pursuant to § 1226(a), it also found that "[u]nlike other aliens held under § 1226(a), VWP entrants are not entitled to a bond redetermination proceeding before an Immigration Judge. *Id.* at *2 (citing *Matter of Werner*, 25 I & N Dec. 45 (BIA 2009)).

the parties do not dispute that Petitioner entered the United States pursuant to the VWP, and Respondent acknowledges that there are constitutional limitations on the length of his detention.

Given the lack of analogous cases analyzing the prolonged detention of VWP violators in asylum-only proceedings, the Court analyzes Petitioner's detention under the more general principles governing prolonged detention of removable aliens. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that in order for post-removal detention under 8 U.S.C. § 1231 to be constitutional, it must be limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. The Court in *Zadvydas* also stated broadly that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *See* 533 U.S. at 690. Although that decision explicitly considered post-removal detention under 8 U.S.C. § 1231, the Court did not explicitly restrict the problem of indefinite detention to § 1231. Notably, the *Zadvydas* Court further found that preventing danger to the community was not an adequate justification for indefinite detention of aliens under § 1231 where "the provision authorizing detention does not apply narrowly to a small segment of particularly dangerous

criminals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations." *Zadvydas*, 533 U.S. at 691.[14]

While *Zadvydas* considered aliens subject to a final order of removal under § 1231, in *Demore v. Kim*, the Supreme Court considered the constitutionality of mandatory detention when a final removal order has not yet been entered. More specifically, *Demore* considered the constitutionality of mandatory detention pending the resolution of removal proceedings under § 1226(c), the portion of the general detention statute that provides for mandatory detention of aliens who have been "convicted of one of a specified set of crimes." *See Demore*, 538 U.S. 510, 513 (2003). Aliens detained pursuant to § 1226(c) are not entitled by statute to an individualized bond hearing to determine if their detention is appropriate under their circumstances. *See id.* at 514. Although the Supreme Court held in *Demore* that detention pursuant to Section 1226(c), without an individualized determination hearing, was constitutionally permissible, the Supreme Court's holding, as noted by District Court Judge Yvette Kane in *Madrane v. Hogan*, 520 F.Supp.2d 654 (M.D. Pa. 2007), is "narrow ... grounded in repeated reference" to the brevity of the removal proceedings. *Id.* at 664. Under Section 1226(c), the Supreme Court indicated that detention pending removal proceedings has a definite termination point, in the majority of cases it lasts for "roughly a month and a half." *Demore*, 538

---

[14] In *Clark v. Martinez*, 543 U.S. 371 (2005), the Supreme Court considered whether its decision in *Zadvydas* was also applicable to aliens in the first category of § 1231(a)(6) – "that is, "to the category of aliens 'ordered removed who [are] inadmissible under [§ ]1182.'" *Id.* at 378. Writing for the majority, Justice Scalia explained that "[t]he operative language of § 1231(a)(6), 'may be detained beyond the removal period,' applies without differentiation to all three categories of aliens that are its subject" and that "[t]o give these same words a different meaning for each category would be to invent a statute rather than interpret one." *Id.* at 378, 380-81 (rejecting dissenters' argument that *Zadvydas* applies only to admitted aliens). *Clark* was decided purely on statutory grounds. As such, it does not shed much light on the due process rights of inadmissible aliens.

16

U.S. at 529. Put simply, under *Demore*, brief periods of mandatory immigration detention do not raise constitutional concerns, but prolonged detention does. Indeed, the decision set the stage for challenges to the constitutionality of longer periods of mandatory detention before a final removal order has been entered. *See, e.g., Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011) (explaining that § 1226(c) requires mandatory detention without a bond hearing and stating that "the constitutionality of this practice is a function of the length of the detention").

It is now well-established that mandatory detention pursuant to § 1226(c) is subject to a reasonable time limitation. *See, e.g., Diop*, 656 F.3d at 235 (reading a reasonableness limitation into § 1226(c) and finding that a nearly three-year detention under § 1226(c) was unreasonable, and therefore, unconstitutional). In *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015), the Third Circuit recently held that the Due Process Clause limits the Government's authority under 8 U.S.C. § 1226(c) to detain an alien without bond once the burdens to the alien's "liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute." [15] *Id.* (finding that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez–Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute"). Thus, under the Third Circuit's precedent in *Diop* and *Chavez-Alvarez*, detention pursuant to § 1226(c) that has become unreasonable in length requires habeas relief in the form

---

[15] The Third Circuit noted, however, that the determination of reasonableness of detention is "highly fact-specific." *Id.* at 474, 476-477 (explaining that the Petitioner's good faith, the bona fides of Petitioner's challenge, and the reasonableness of the Government's conduct matter in determining when "a tipping point had been reached on the reasonableness of this detention"). Notably, although Respondent states that "Petitioner's asylum application, which included numerous hearings and appeals, has taken about a decade to resolve" (ECF No. 9, Res. Br. at 5), Respondent does not claim that Petitioner is litigating his asylum claims in bad faith.

of a bond hearing.[16] *See Diop*, 656 F.3d at 231 (applying the canon of constitutional avoidance to hold that § 1226(c) does not authorize prolonged detention without a bond hearing, but that it only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary").

In *Zadvydas* and *Demore*, the Supreme Court explained the twin justifications for immigration detention—(1) ensuring the appearance of aliens at future immigration proceedings, and (2) preventing danger to the community. *Zadvydas*, 533 U.S. at 692; *Demore*, 538 U.S. at 513, 519. Here, 23 months have passed, and Petitioner has not had a hearing to determine if these two justifications do, in fact, apply to his detention. *See Diop*, 656 F.3d at 235 ("We do not believe that Congress intended to authorize prolonged, unreasonable, detention without a bond hearing."). Petitioner is unlikely to receive a bond hearing without this Court's intervention in light of the BIA's decision in *Matter of Werner*. Assuming without deciding that Petitioner may be held at ICE's discretion pursuant to 8 U.S.C. 1187, his predicament is not unlike an alien subject to mandatory detention pursuant to § 1226(c). *See Diop*, 656 F.3d at 232 (explaining that § 1226(c) requires mandatory detention without a bond hearing and stating that "the constitutionality of this practice is a function of the length of the detention").

Whether analyzed under *Zadvydas* or *Diop/Chavez Alvarez*, Petitioner's continued detention would violate due process. Under *Zadvydas*, which applies to detainees with a final order of removal under 8 U.S.C. 1231, Petitioner had been detained for more than six months

---

[16] In contrast to the Third Circuit's balancing approach announced in *Chavez-Alvarez*, the Ninth and Second Circuits have adopted a bright line rule mandating a bong hearing after six months of detention. *See Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2015) (mandatory detention authority under 8 USCA §§ 1226(c) and 1225(b) limited to six-month period, subject to finding of flight risk or dangerousness); *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015) ("[W]e join the Ninth Circuit in holding that mandatory detention for longer than six months without a bond hearing affronts due process.") (citing *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)).

after the BIA dismissed his appeal, and the BIA has since reversed course and reopened of his asylum case <u>for the third time</u>. This turn of events along with the protracted nature of his asylum case, provide "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future."[17] *See Zadvydas*, 533 U.S. at 701. Under *Chavez-Alvarez*, which applies to detainees without a final order of removal, Petitioner has been detained longer than the presumptively reasonable six-to-twelve months. *See* 783 F.3d at 478 (finding that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez–Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute"). Furthermore, Respondent has not argued that Petitioner's asylum claims are wholly without merit or that he is litigating his asylum claims in bad faith. Instead, Respondent simply acknowledges in its brief that "Petitioner's asylum application, which included numerous hearings and appeals, has taken about a decade to resolve." (ECF No. 9, Res. Br. at 5.) For all of these reasons, the Court finds that Petitioner's detention has become unreasonably prolonged under the principles set forth in *Zadvydas* and *Demore* and the Third Circuit precedent interpreting those decisions, and the Court will grant the writ of habeas corpus.

Having determined that Petitioner's detention has become unreasonably prolonged and that habeas relief is warranted, the Court must determine the appropriate remedy. The Third Circuit has found that bond hearings – in which an immigration judge determines whether the

---

[17] The Court notes that Respondent recently informed the Court that the immigration court intends to issue its written decision at the end of January. (ECF No. 19.) Respondent does not argue that habeas relief should be denied on this basis. Given the protracted history of Petitioner's asylum proceedings, this information does not alter the Court's analysis.

19

alien will pose a danger to the community or a flight risk – is appropriate habeas relief when an alien's detention has become prolonged and that alien is not subject to a final order of removal. *See Diop*, 656 F.3d at 235 ("Should the length of his detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof."). Here, Petitioner's asylum case was recently reopened and remanded to the IJ, where it is still pending. As such, the Court finds that a bond hearing before an immigration judge is more appropriate than release in this case because an immigration judge is in a better position to conduct the sort of individualized review that is necessary to determine if Petitioner should be released during the pendency of his asylum case.

## IV. CONCLUSION

For the reasons expressed in this Opinion, the Court finds that Petitioner's detention has become unreasonably prolonged under the principles set forth by the Supreme Court in *Zadvydas* and *Demore* and the Third Circuit decisions interpreting that precedent. As such, the Court finds that habeas relief is warranted, and Petitioner is to be afforded an individualized bond hearing before an immigration judge within 10 day of the date of the Order accompanying this Opinion. An appropriate Order follows.

Date: Feb 26, 2016

_____
Madeline Cox Arleo, District Judge
United States District Court